```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND


_____
                                   )
ERIC G. NEUFVILLE,                 )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     C.A. No. 20-005 WES
                                   )
PATRICIA COYNE-FAGUE, et al.,      )
                                   )
          Defendants.              )
_____)
```

**MEMORANDUM AND ORDER**

Defendants in this matter move to dismiss all counts of pro se Plaintiff's Complaint, arguing: first, that it fails to state a First, Fourth, Fifth, or Fourteenth Amendment claim; second, that it fails to state a 42 U.S.C. §§ 1981, 1982, or 1985 claim; third, that official capacity defendants are not "persons" under Section 1983; and fourth, that the individual capacity defendants are entitled to qualified immunity.  Mot. to Dismiss, ECF No. 12. Plaintiff did not file a response to the motion, although he did file an untimely Motion for Extension of Time, ECF No. 14. Plaintiff also filed a Motion to Appoint Counsel, ECF No. 13.  For the following reasons, Defendant's Motion to Dismiss, ECF No. 12, is GRANTED, Plaintiff's Motion for Extension of Time, ECF No. 14, is DENIED, and Plaintiff's Motion to Appoint Counsel, ECF No. 13, is DENIED as moot.

I. Background

Plaintiff, an inmate at the Rhode Island Department of Corrections, alleges that he was improperly disciplined after he wrote a legal memorandum on behalf of fifty-one other inmates and filed it with the Rhode Island Supreme Court ("RISC"). Compl. 6, ECF No. 1; see also Ex. to Compl. 9, ECF No. 1-1. Department of Corrections' ("DOC") Policy 13.03-4 provides that "[i]nmate law clerks shall not perform actual research and preparation of casework for other inmates[,]" in order to "prevent the exchange of services for cash, favors, or goods and discourage[] possession of contraband in the form of another inmate's legal materials." Ex. to Compl. 6. DOC officials learned of Plaintiff's actions through routine inspections of inmates' incoming mail when a nonprofit to which he mailed a copy of his drafted memorandum returned the mail to sender. Compl. 7. DOC officials commenced an investigation and subsequent disciplinary hearing, wherein he confirmed that he had written the legal memorandum on behalf of the other inmates. Id. at 8. He was disciplined with ten days' loss of all privileges and ten days' loss of good time credits. Id. The Deputy Warden of the DOC denied his subsequent appeal. Id. He further maintains that because of this discipline, he also lost his prison job as a painter, was denied access to outside recreation, and denied access to the Courts. Id. at 9. He also

2

claims that Defendants "committed 'theft of legal material[.]'" Id.

Plaintiff alleges claims under the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1982, and 1985. He seeks a permanent injunction requiring the DOC to "allow[] inmates to assist one another in their legal matters" and an injunction requiring that the DOC "stop racially targeting minorities." Id. at 6. He also seeks the following damages: backpay from his prison job, $5,000,000 in compensatory damages, $500,000 in nominal damages, $500,000 in punitive damages from each Defendant, and attorney's fees and costs, though he is not represented by counsel. Id. at 6, 11.

II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In examining whether a plaintiff is entitled to relief, the Court must accept as true all well-pleaded facts and indulge all reasonable inferences in the plaintiff's favor. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). But "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citation and quotations omitted).

In "deciding a 12(b)(6) motion, 'the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003)). "This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default." Id. (citing Pinto v. Universidad De Puerto Rico, 895 F.2d 18, 19 & n. 1 (1st Cir. 1990)) (other citations and quotations omitted).

III. Discussion

While Plaintiff provides significant detail as to the facts of this case, he makes little to no argument as to each of his claims. See Compl. 3, 6-10. The Court addresses each of Plaintiff's claims in turn.

   A. First Amendment

Plaintiff argues that "he was protected under the First Amendment to the United States Constitution to challenge the [DOC policy] in assisting other prisoners[.]" Compl. at 8. The Supreme Court in Shaw v. Murphy held that there is no "special

4

right" to "provide legal advice." 532 U.S. 223, 228 (2001); see also Hannon v. Beard, 645 F.3d 45, 48 n.3 (1st Cir. 2011) ("[P]roviding legal assistance [to other inmates is] accorded a lesser degree of constitutional protection."). In considering whether an inmate's mailed correspondence to other inmates was entitled to heightened First Amendment protections because it contained legal advice, the Supreme Court held that "[a]ugmenting First Amendment protection for inmate legal advice would undermine prison officials' ability to address the complex and intractable problems of prison administration. Shaw, 532 U.S. at 231 (citation and quotation omitted)(noting that valid penological interests underly applicable prison regulations due to abuse of giving and seeking legal assistance).

The DOC's policy is permissible so long as it passes the test the Supreme Court outlined in Turner v. Safley, 482 U.S. 78 (1987), and applied in Shaw. See Shaw, 532 U.S. at 229-30 ("[I]n Turner we adopted a unitary, deferential standard for reviewing prisoners' constitutional claims: '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'") (quoting Turner, 482 U.S. at 89). The Court in Shaw described the rationale applicable to the regulation, observing that "[a]lthough supervised inmate legal assistance programs may serve valuable ends, it is

5

'indisputable' that inmate law clerks 'are sometimes a menace to prison discipline' and that prisoners have an 'acknowledged propensity . . . to abuse both the giving and the seeking of [legal] assistance.'" Id. at 231 (quoting Johnson v. Avery, 393 U.S. 483, 488, 490 (1969)).  The language of the DOC policy itself includes the same reasoning, that it "is intended to prevent the exchange of services for cash, favors, or goods and discourage[] possession of contraband in the form of another inmate's legal materials." Ex. to Compl. 6.  This Court holds that the DOC's policy is reasonably related to legitimate penological interests for the reasons it describes and is therefore permissible.  Defendants' Motion with respect to Plaintiff's First Amendment claim is GRANTED.

    B. Fourth Amendment

Plaintiff merely references the Fourth Amendment but does not articulate a basis for his claim.  However, in examining the facts, it appears that he believes the DOC violated his Fourth Amendment rights by inspecting his incoming mail, which led to the discovery of his filing of a legal brief on behalf of other inmates at the RISC.  See Compl. 9.  That mail was subsequently confiscated.  Id.  While inmates retain limited Fourth Amendment rights upon their commitment to a corrections facility, these facilities may conduct reasonable searches based on their "significant and legitimate security interests[.]"  Bell v.

6

Wolfish, 441 U.S. 520, 559-60 (1979). In this vein, inspections of incoming mail are "valid if [they are] reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) (citation omitted); see also Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (upholding prison regulation permitting prison employees to open incoming mail); Word v. Croce, 169 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) ("[T]here is no question that prison officials may open incoming mail to ensure that no contraband is contained in the correspondence.") (citation omitted)); Strong v. Woodward, No. CV 04-08596-RGK (OP), 2010 WL 5890848, at *6 (C.D. Cal. Dec. 8, 2010) ("Isolated incidents of mail interference, without any evidence of improper motive or resulting interference with the right to counsel or to access to the courts, do not give rise to a constitutional violation.").

The DOC has a legitimate penological interest in routinely reviewing inmates' incoming mail to ensure that no contraband is contained in the correspondence, and Plaintiff has alleged no evidence of improper motives here. This material violated the DOC's reasonable policy, and the DOC justifiably confiscated it. Further, it is not clear from the facts that the returned envelope was specifically marked as "legal" mail, which typically should be opened in an inmate's presence. See Word,

7

169 F. Supp. 2d at 228. Defendants' Motion to Dismiss with respect to Plaintiff's Fourth Amendment claim is GRANTED.

### C. Fifth Amendment

Plaintiff's Fifth Amendment claim fails because the Fifth Amendment is applicable only to federal defendants. See Dusenbery v. United States, 534 U.S. 161, 167 (2002); see also Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause only applies to the federal government," and not to state and local law enforcement officials). Plaintiff does not allege that any of the Defendants are federal actors. Compl. 2-4; see also Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007) ("As plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim was properly dismissed."). Defendants' Motion to Dismiss with respect to Plaintiff's Fifth Amendment claim is GRANTED.

### D. Fourteenth Amendment

Plaintiff again makes only a passing reference to the Fourteenth Amendment while listing multiple alleged violations. Compl. 3, 9. In examining Plaintiff's Complaint, none of the facts allege either an equal protection or due process claim under the Fourteenth Amendment.

8

1.   Equal Protection

With respect to equal protection, the United States Supreme Court "has long held that a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Armour v. City of Indianapolis, 566 U.S. 673, 680 (2012) (quotations and citation omitted); see also Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003) ("Under the rational basis test, the classifications in [a state's] laws come[] to us bearing a strong presumption of validity[.]") (citation and quotations omitted)).

Plaintiff does not allege that he is part of a suspect class, merely alleging that he was "racially targeted and discriminated against." Compl. 9. But the facts do not suggest as much, as he was disciplined pursuant to a generally applicable DOC policy for conduct he admitted to undertaking. Id. at 6. This is not enough to state a claim of equal protection. See Bishawi v. Ne. Ohio Corr. Ctr., 628 Fed. Appx. 339, 345 (6th Cir. 2014) ("Conclusory equal protection claims, without specific factual allegations, are inadequate to state a civil rights claim") (citation and quotations omitted)); Iqbal, 556 U.S. at 677-78 (2009) ("A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause

9

of action will not do.'" (quoting Twombly, 550 U.S. at 555, 557 (internal citations omitted)). Further, as described throughout this opinion, Plaintiff has failed to state a claim that the DOC's actions infringed any of his fundamental rights. As stated previously, the DOC has legitimate penological and safety interests in monitoring its inmates' correspondence, regulating their legal assistance to other inmates, and disciplining inmates' for violations of those regulations. He has failed to allege a violation of the Fourteenth Amendment on this basis.

### 2. Due Process

Plaintiff further fails to allege a due process violation. He makes no specific arguments as to this point. See generally Compl. 3, 6-10. Due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (quotation and citations omitted). Prisoners retain "only a narrow range of protected liberty interests." Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir. 1994) (quotations and citation omitted). It is clear from the law that Plaintiff's allegedly lost prison job and disciplinary sentence do not implicate an identifiable liberty interest. See, e.g., Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986) (finding no liberty interest in a prison job); Navarro v. Wall, C.A. No. 09-223 ML, 2011 WL 1630035, at *6 (D.R.I. Mar.

22, 2011) (same); Taylor v. Collins, 464 F. Supp. 2d 88, 90 (D.R.I. 2006) (finding a similar disciplinary sentence, along with 10 days' segregation, "completely reasonable and well within the prison's discretion to impose."). As he has failed to even allege facts amounting to a liberty interest, Plaintiff has failed to allege a procedural due process claim.

Plaintiff has further failed to allege a substantive due process claim because there is nothing about the disciplinary measures taken by the DOC that "shocks the conscience" or is "violative of universal standards of decency." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000) (citation omitted). These disciplinary measures were reasonable to impose.

For all these reasons, Defendants' Motion to Dismiss with respect to Plaintiff's Fourteenth Amendment claim is GRANTED.

 E. 42 U.S.C. § 1981

Plaintiff's claim under 42 U.S.C. § 1981 fails because 42 U.S.C. § 1983 allows for official capacity suits against state actors for constitutional violations, not § 1981. See Buntin v. City of Boston, 857 F.3d 69, 75 (1st Cir. 2017) ("We conclude that § 1983 remains the exclusive federal damages remedy for § 1981 violations by state actors[.]") (quotation and citation omitted).

11

Plaintiff's claim also fails because he has not alleged any kind of contractual relationship with Defendants here, nor any interference with his ability to make or enforce any contract based on race. See generally Compl. 3, 6-10. Section 1981 "prohibits interfering with an individual's right to make or enforce a contract on the basis of race." Jackson v. Biedenharn, 429 Fed. Appx. 369, 371 (5th Cir. 2011); see also Fantini v. Salem State Coll., 557 F.3d 22, 33-34 (1st Cir. 2009) (further describing Section 1981). Defendants' Motion to Dismiss with respect to Plaintiff's claim under 42 U.S.C. § 1981 is GRANTED.

    F. 42 U.S.C. § 1982

Plaintiff's claim under 42 U.S.C. § 1982 fails for similar reasons as his claim under § 1981, because Plaintiff alleges no facts stating that he and the DOC were engaged in "inheriting, purchasing, leasing, selling, holding, and conveying 'real and personal property.'" Jackson, 429 Fed. Appx. at 372; see also id. ("Unless a plaintiff establishes that a party or parties impaired his ability to enter into a contract for property under § 1981, he cannot establish a § 1982 claim for the deprivation of an interest in property.") (citations omitted). Defendants' Motion to Dismiss with respect to Plaintiff's claim under 42 U.S.C. § 1982 is GRANTED.

G. 42 U.S.C. § 1985

Plaintiff's claim under 42 U.S.C. § 1985 fails because, again, he has not alleged any facts that could amount to a 42 U.S.C. § 1985 violation. See generally Compl. 3, 6-10. "To state a claim under § 1985, the Complaint must 1) expressly claim that an agreement was formed between conspirators, or 2) make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Laurence v. Wall, 2009 WL 1657982, at *3 (D.R.I. June 12, 2009) (quotations and citations omitted). If "[a] plaintiff's complaint contain[s] vague, conclusory allegations of conspiracy, without any specification of the agreement forming the conspiracy, [it] fails to state a claim under Section 1985." Id. (quotations and citations omitted). Plaintiff has not alleged a single fact demonstrating or requiring the inference that an agreement was formed between the "conspirators," ostensibly the DOC officials here. The DOC officials merely learned of Plaintiff's filing with the RISC, and, as his actions were in violation of prison regulations, administered discipline accordingly and confiscated the material he produced in violation of those regulations. These facts do not amount to a

13

conspiracy.  Defendants' Motion to Dismiss with respect to Plaintiff's claim under 42 U.S.C. § 1985 is GRANTED.

IV.  Conclusion

As Plaintiff has not stated a single claim for relief that is plausible on its face, the Court need not address Defendants' other arguments.  Accordingly, Defendant's Motion to Dismiss, ECF No. 12, is GRANTED, Plaintiff's Motion for Extension of Time, ECF No. 14, is DENIED, and Plaintiff's Motion to Appoint Counsel, ECF No. 13, is DENIED as moot.

IT IS SO ORDERED.

*/s/ WESmith*
William E. Smith
District Judge
Date: February 1, 2021